Good afternoon. The first one is, and I'm not sure I'm pronouncing this right, Jatharsan Thangarasa v. Attorney General of the United States of America. Council Petitioner, when you're ready, please tell me how to pronounce your name as well as your client's name. My name is Rudra Kumaran. I represent Petitioner Jatharsan Thangarasa. Jatharsan Thangarasa. May it please the Court. First of all, I would like to reserve three minutes for Roberta, Your Honor. Great. There are three main issues I would like to argue today, Your Honor. This case falls within the purview of Sadananda Rasa v. Attorney General. This Court decided four years ago, Your Honor. In that case, the Court said when a person is granted withholding of removal, and when he's denied asylum, the Court has to take four points into account. The Court identified four points. The first point the Court identified, since he's granted withholding of removal, it is subsumed that he has a well-founded fear of persecution, whether that outweighs all other adverse factors. But if you look at the judge's decision with respect to the reconsideration, not a single line about that. He did not engage in this four-part test. So, Counselor, you cite Sadananda Rasa, and obviously that's the most, the closest precedent. But there, the Third Circuit's opinion held only the immigration judge must identify an egregious adverse factor. So you could read that as saying it's a procedural requirement. Tell us what you think is the egregious factor. But here the judge did say that. Are you asking us to go further and adopt substantively, here's the category of what counts as an adverse factor or not? I'm trying to understand whether Sadananda Rasa is just a procedural requirement or whether substantively we have to adopt a rule that says, yes, lying about immigration violation or fraud is or isn't an egregious factor. My response would be that the Court identified four points as a procedural method. Procedural. As a procedural method, the Court identified. Okay. And my initial contention, the I.J. did not consider any of all. He only focused on one factor. That was partly because the Court said that he has to analyze the hardship to the alien as well as to the family. And the I.J. only focused on the family. And he said, hey, there's no family, so there's no problem. What other factors should have been considered? Sorry, Your Honor. What other factors should have been considered? The main factor, the main factor, whether the well-founded fear of persecution outweighs. He has to do it again. He has to do it de novo, which he didn't do it. But in doing that weighing what should have been, what should the immigration judge or the BIA, what factors should have they considered? Should they have considered the affidavits of good character? Should they have considered the actual facts of the abuse that the petitioner suffered to determine in not only as it had been withholding, but also in the asylum how that the degree of that abuse should be considered in holding asylum? Yes. I've come to the correctness of the case. But here, what they should have considered that whether the welfare in the context of reconsideration, they considered that in the initial denial of the asylum. But when it comes to the reconsideration of the denial of asylum, they did not the main factor. They did not consider the well-founded fear of persecution. That is the main factor. They did not consider at all. Well, it seemed that it was considered in the sense it was being weighed against what was an egregious factor. So is it that the weighing was incorrect, that it, you know, it's nearly dispositive in your opinion or you're arguing? Yeah. The Sadananda Rasa said, Your Honor, that there are two steps. First, you deny asylum on discretion. OK, that's that's one part. Right. The second part, the court said that if a person is granted withholding of removal, you do it de novo. Again, you do it de novo. You review the factors, which the agency did not do it. That's my main consideration, main argument. The other argument about the egregious factors, Your Honor, they were reading too much into it, Your Honor. They were reading too much. The idea was mad that this is a special program. We saw we have a program, the Congress enacted for specific countries. And this guy comes and abuse it. That was the main factor. The idea was mad. How much, you know, in Pula, there seemed to be this sort of sliding scale of how bad conduct can be. The least bad would be you leave your country of origin with a fake document of some kind. And then it seemed to say the worst was affirmatively obtaining fraudulent U.S. documents and using those to enter the United States. So where does a fake French passport fall on that scale? And then how much did the visa waiver portion move it towards the worst end of the scale? Your Honor, it evolves according to time. It evolves because if you take the matter of Saleem in the early 80s, the BIA said the circumvention of orderly refugee procedure is a serious adverse factor. The BIA said in the matter of Saleem. After four years, the BIA in the matter of Pula said, no, that's not the only factor you take into consideration. That is also a factor, but that is not the make or break case. So it changes time. The first they said any kind of fraudulent thing is bad. End of the case. The second thing they said, oh, that is one of the factors. But here the judge was really mad that this guy abused a special program. But my contention, he doesn't know anything about this special program. And that's what I'm trying to understand. He doesn't know. How much worse, how much does it move the needle whether or not he knows about it? He used a fraudulent document. That's all. He's a high school student from a third world country knowing about this visa waiver program. I myself don't know. The immigration lawyer. People don't know. So the judge was real, that was his main contention. This guy has a sophisticated culpable mind and manipulates the system. That's not true. Now, you were counsel in the Thrasa case.  And that court, the court twice emphasized the same word. And in saying in weighing these factors making discretionary asylum determination and IJ need not expressly address every factor. So I'm not sure why you're saying all four have to be mentioned. But at the very least the IJ must demonstrate that he or she reviewed the record and balanced the relevant stress in the word relevant twice. Factors must discuss the positive or adverse factors that support his or her decision. So this is a situation that's very different from a lot of the other, you know, asylum fraud cases where your client had left Sri Lanka two years before. This is not just racing to get out of a war scene. The person could have stopped in France and not be chased by the persecutors in Sri Lanka. So why is it that the IJ had to expressly go in and talk about these things if the IJ did not consider, thought this is just different from those cases where someone was just fleeing a civil war or something. I understand, Your Honor. That is a legitimate factor. I'm not disputing that. That is a legitimate factor. You should take into account when you balance the factors. We are not fighting that. As the court said, you don't have to mention each and every factor. But here he mentioned it. He mentioned the visa waiver program and our contention. That is a wrong analysis. Had he simply not said anything, it would give the benefit of the doubt. The IJ need not say anything. Is that visa waiver program factor so important that it actually changes the weighing here? If you read the IJ's opinion, that is all about. He starts from there. He ends from there. His opinion, the reason he's denying, that seems to be the only reason he's denying. All over, all over his opinion. That's what he's talking about. So our contention, that's a wrong analysis. What does it, as far as the intent of your client, he had the other Sri Lankan passport, also not, it sounds like maybe not in his name, although he said he didn't look into it. But doesn't it reflect that he knows there's a difference between his Sri Lankan passport and the French passport, that there's some kind of extra benefit with the French passport? Otherwise, why wouldn't he just use the Sri Lankan passport to try to enter the United States? These people are just puppets and pawns of a smuggler, Your Honor. These guys don't know anything. The guy says, take this passport, you get on the plane, they do it, Your Honor. And here also the IJ confused. IJ confused in a sense, he said he did not look at the Sri Lankan passport, but he himself said he made himself familiarized with the French passport. He familiarized the name. So IJ got confused. IJ said, no, I don't believe that you did not familiarize with the French passport. He said, I did. So that's also another problem, IJ said. And the third point, Your Honor, the character certificate. IJ did not consider at all. The BIA said, okay, it won't mitigate the egregious factor. Okay, standing alone, if you take those character certificates alone, it is not going to tip the balance. But our argument, you should have taken that cumulatively with other factors, which the BIA did not do. IJ completely did not do it. So that's the other third factor, Your Honor, would argue that the BIA, the agency, erred in this matter, Your Honor. So if the court doesn't have anything, I'll come back later, Your Honor. Thank you, Counselor. We'll head back over to bubble and add this time to our bubble time. Ms. Freyer, whenever you're ready. Good afternoon, Your Honors, and may it please the Court. Allison Freyer for the Attorney General. Here, the agency did exactly what the regulations, this Court's decision in South Entrasa, and the agency's president required the IJ to do. He looked at the positive equities, he looked at the negative equities, he weighed them, and he found that the negative equities outweighed the positive equities, denied asylum and the exercise of discretion. But he didn't look at all the positive equities, did he? I think he did, yes. What about the good character? I think he didn't explicitly recognize those in his decision, though his decision says that he looked at everything in the record, but he didn't explicitly mention those. But those don't discuss the fraud that was the basis for the negative, the main basis for his discretionary denial. So they don't, they're not relevant, they're not relevant. Well, let me tell you how I look at this. When they talk about Pula, that it has to be an egregious, something egregious if asylum has been granted. And what I think we're trying to do is to make sure that dishonest people don't get into the United States. And if the only indication of dishonesty is the fact that he used a smuggler and came in on a fraudulent passport, but the rest of his life has been law-abiding, isn't that very different from the situation where you have someone who has had previous episodes of misrepresentation, of cheating people, of defrauding people, and then comes in on a fraudulent passport as well. And to me then, the affidavits of good character and the description of the abuse to which he was subjected to in Sri Lanka in getting withholding of removal was irrelevant in the asylum issue because it was such an extreme amount of abuse that in determining the relevancy of the false passport, you not only have to consider his prior good character, but you have to consider the extent of the abuse to which he was subjected in the past and to which he would be subjected in the future. And when you have those two points opposed to the fraudulent passport and coming in with a smuggler, an immigrant smuggler, to me you don't have that additional fact that Pula demands because you, number one, have an honest man otherwise, and number two, you have a person who is going to be subjected to extreme abuse if he is sent back to Sri Lanka. And you tell me how you think that's wrong or why those considerations don't balance out. Okay, to that I would say two things. To take the second one first on the issue of the extreme abuse, there's no requirement that the persecution that he faces be particularly extreme or severe. Persecution itself is an extreme concept to be sure, but he doesn't have to meet a heightened standard, and the IJ didn't hold him to one. And in recognition of the fact that his life is in danger if he returns to Sri Lanka, he is not facing deportation to Sri Lanka now or ever. Withholding of removal is a permanent harm. Well, not about ever. I mean, he's got withholding of removal now, but that doesn't mean forever, and that doesn't mean he can become a citizen. That doesn't mean that he can get a green card, which he could get if he were granted asylum. That's true, but withholding of removal is a permanent form of relief unless and until the government takes steps to withdraw it for some reason. But that's where it is a permanent form of relief. He is not facing deportation to Sri Lanka now. He could be sent to a third country. Sure. We don't know. I mean, we have a new administration. We don't know what they might do. But the third country would have to agree to take him, and there's no indication that he has links to any third country that would agree to take him. The most likely course of this man's life is that he will live in the United States for the rest of his life. The government has protected him and will continue to do so as a result of what happened to him in Sri Lanka. The other thing that I would say is that I would finesse the premise of Your Honor's question a little bit. It's not just that we don't want dishonest people to come to the United States. It's that we don't want people to commit fraud on a system and then ask the system for favors in the exact same proceeding. So the government understands, and the regulations reflect, that people who are escaping persecution will do extreme things to protect their lives, and that does not reflect on their character in the least. However, for people like Mr. Thakkarasa, who were not fleeing persecution at the time of their fraud on the United States, he had left Sri Lanka two years before he showed up in Newark, and he was leaving France by way of Lisbon. He was not fleeing Sri Lanka at the time. In fact, he testified his family had been safe in Sri Lanka for two years at the time. They had had one visit from the police immediately after he left, and then nothing else. So he and his family were safe when he landed in Newark and lied to the officers about who he was and where he was from. So if he had just used his Sri Lankan passport, the one that he left Sri Lanka with, where on sort of—you heard me talking about this sort of slide—where does that fall, and how much—what about French passport without VWP, and what about knowledge of the VWP, and then with knowledge? Petitioner has not raised any claim that the IJ's consideration of the VWP program was improper. I'd like to know your views on how egregious this falls, based on case law. Sure. The case law doesn't really address this very much. Certainly, fraud is most common. Well, I shouldn't say most common. The record does not reflect petitioner's degree of knowledge of the ESTA that he was showing on his phone or the VWP program more generally. It's most likely the smuggler knew, and that's why they chose a passport for him, because it doesn't require a visa or counselor screening, and that's something that the smuggler would find useful. But there's no evidence in the record about what petitioner knew or didn't know, and because it's his burden to demonstrate both an abuse of discretion and that the agency's actions were contrary to law, that silence is insufficient to carry his burden. So I'm not really sure I understand petitioner's argument here. What does the good character, the certificates, or other things have to do with whether or not, you know, with the balancing gear? If they don't mitigate the, you know, the action of submitting the fraud, is there a requirement that the judge do a kind of a free-floating balancing or just look at how serious the egregiousness is in light of the persecution, which seems to be, you know, he was in France for two years is your point. So what does the law require the IJ to do with those certificates or his good character or other general mitigating factors? To weigh them in the totality of the circumstances. So no one factor is supposed to be decisive or determinative. The well-founded fear or the likelihood of future persecution is a serious positive equity, and in most cases that carries the day. That's why these cases are so unusual. But no one factor is outcome determinative. The agency is supposed to weigh one against the other. And before this court, it is not this court's role to re-weigh the equities or even to decide in the first instance or to decide for itself whether the conduct is egregious or not, simply to see whether the agency acted manifestly contrary to the law and also committed an abuse of discretion. The manifestly contrary to the law is statutory language. It's in the statute. Petitioner must demonstrate that the agency violated the law in taking his fraud seriously. But if certain presented evidence is not considered, even though the IJ has said I've looked at all the evidence, if he is choosing not to consider certain evidence, doesn't he have to at least indicate that in his determination? I would argue not where it doesn't seem relevant. Well, but isn't good character relevant when you're saying because of his bad character and using a fraudulent passport, he can't come in? But if he on the opposite side says, well, look, basically I've got good character and here is my proof of that, that is valuable in the weighing, isn't it? And if it's not going to be considered in the weighing, doesn't that have to be at least indicated that in the weighing factor, we did not consider this evidence that was provided by the petitioner? That might be best practices, but I don't think failure to do so violates the law. The IJ said that he looked at the entire record, and we can take him at his word that he did so. And where the certificates simply don't address anything that the IJ is being asked to decide, because he's not really deciding if the petitioner is a good person or not. He doesn't know him like that. That's not his role. His role is simply to decide whether, as presented, the positive factors outweigh the negative factors. And petitioner has been unable to point to any case in which someone like him has won on one of these challenges. Every other case in which the petitioner has prevailed, the agency either made a major procedural error, like failing to reconsider as required by the regulation at all, or saying things like family reunification is not relevant, which is just legally incorrect. Or the petitioner had relatives that he would have been unable to be reunited with, based on his unusual legal status of having withholding and not asylum. None of that applies here. Counselor, you know, I take the point you just made, but we haven't been talking about the standard review. The standard review here is abuse of discretion, correct? Yes, and manifestly contrary to the law. Okay, right. And so it's an abuse of discretion if you say, well, you know, one of these legally relevant factors is categorically, you know, impermissible, can't be considered, et cetera. But how does that apply when an agency doesn't do that but is just weighing, and someone says it should have been weighed differently? That is a quintessential challenge that does not carry the day under the abuse of discretion standard. To find an abuse of discretion and manifestly contrary to law, particularly where the statute is so clear that it must rise to manifestly contrary to the law, the fact that other reasonable people might weigh the factors differently does not justify granting the petition for review. The petitioner must point to some sort of consideration of an improper factor or refusal to consider a factor that is relevant, and he has not done so here. Particularly, he has not done so throughout the litigation to maintain exhausted and not waived arguments to show that the agency acted improperly. In fact, the IJ cited Southanthrasa and did exactly what this Court asked him to do in that decision. But didn't the IJ, in considering the abuse that had been suffered, did not look at the record of the actual abuse. It looked at the fact that he had been granted withholding of removal. Is that correct? The IJ did not recite the specific incidents that petitioners suffered. That's correct. But he recognized that it rose to the level of persecution on account of a protected ground by the government or forces that the government was unable or unwilling to control and gave him the benefit of the rebuttable presumption. So he was granting withholding of removal, and he did recognize that fact, but he didn't outline the facts underlying it, if that's what you mean. But I don't think he was required to. Yeah, because doesn't the degree of abuse, is that not a factor in considering asylum? No. It's a switch. Either you've demonstrated persecution or you have not. But if you have demonstrated persecution, don't you have the right to show how you were persecuted? Not only in the prior withholding of removal, but then again when you go for asylum, to have the right to demonstrate how you were persecuted, because the degree of that can be a factor in determining asylum as well as withholding of removal. But if you don't have the factual discussion of what actually happened, the judge deciding asylum is not getting the full record of the whole situation. Well, I just certainly heard Petitioner testify to the facts of his situation. So I don't think he was required to recite them again in his decision where he was granting relief or granting protection. But I'm not sure I would agree that the degree of abuse is relevant under the law. The law just says you have to consider that he has been or would be persecuted. It's not the case that if he was more harmed, you could have less fraud and have that balance out differently. I'm not sure I agree the law permits that. There's a whole separate kind of relief humanitarian asylum that is based on egregious past persecution, but that's not an issue here. So that's not an issue because he got withholding of removal. Correct. OK. But he could have gotten withholding of removal on a lesser showing of persecution. I don't know. It would depend on what that lesser showing was. I mean, there are cases in which withholding of removal is based on a history that is of less severe abuse than what we had here. So the fact that you were granted withholding of removal does not give the judge in a separate proceeding deciding asylum, the extent of the abuse that was suffered, to consider that humanitarian aspect that you just mentioned. Well, there is no separate proceeding. The IJ is deciding the exact – it's the same proceeding. It takes place in the same 10 minutes. That's why the IJ's oral decision includes everything. So I don't know what you mean about having to – My understanding was that when he asked for asylum, he had already been granted withholding of removal. No, it's all in the same proceeding. So he is granted withholding and denied asylum by the same IJ on the exact same day at the conclusion of his individual merits hearing. It's not removal proceedings, but it looks like them, and he got it all at the same time from the same judge. So the judge issuing the decision had just sat through the lengthy testimony about petitioner's experiences, and then they usually go off the bench for 15, 20 minutes to gather their thoughts, and then they come right back and issue the decision. So it's all right there all at the same time. Thank you. Thank you. Thank you. Thank you. The government's main argument, it seems to me, that he's been granted withholding of removal, so he's going to be here. There's no problem. He is safe. So there's asylum. He doesn't need asylum. It seems to me that's the government's main argument. Could I ask you – I'm looking at the IJ's decision, administrative record at 70. At the bottom of page four, the court has weighed the nature of the alleged harm that occurred to the applicant and finds the negative egregious factors in this case outweigh the applicant's positive equity relative to his fear of future harm for purposes of discretionary component of asylum. And then most of page five is about what was happening, and it credits the threats and the harm, but then it comes down and ultimately says it balances the egregious demonstration in light of what the court finds to be an egregious equity and attempted abuse of the visa waiver program for all the foregoing reasons in the court's discretionary balancing of the equities. The court finds the asylum application should be denied as a matter of discretion. And then it goes on on page six to discuss the family and the other stuff. So what's wrong with saying, look, there are these positive equities here. I've looked at the persecution. I've looked at family or lack thereof. And then I've looked at the negative, the fraud. What is the procedural error that the I.J. made saying I'm balancing this, I'm balancing this, I'm weighing that? What more does an I.J. need to do? Your Honor, we take it. The I.J. simply say I review the record and this is my decision. And the BIA comes and say, well, the I.J. reviewed the decision and that's his decision. We accept. In that case, your argument is right, Your Honor. But here what the BIA concedes, the BIA says, oh, yeah, the I.J. did not review the corrector certificates. But it's not going to make any difference. That's what the BIA say. BIA put the blame on the I.J. saying I.J. did not review the corrector certificates. Then the BIA said, well, these certificates will not make any difference. The problem there, those certificates by themselves will not make any difference. But you take that into the totality of circumstances. That makes that might make a decision. I am not asking the court to weigh the merits. I am asking the court to send the I.J. to take this corrector certificate into the totality of evidence. And then the I.J. may come and say, well, he doesn't deserve it. That's fine. That's what we are not arguing. Even the two years he stayed in two years or three years in France. I am not asking the court to weigh on the merits. All I am asking the court to ensure the I.J. take the relevant factors into consideration. That's what we are asking, Your Honor. I just don't see anything in here that suggests that the I.J. rejected, refused to consider, ignored, anything like that. It does seem like you're saying, well, the six-page opinion wasn't enough, and I wish he had said more expressly, I give this five points and that three points. I just don't, I don't understand how abuse of discretion review requires them to do that. Let me, however, we are going to read the BIA's opinion. BIA said, OK, the petitioner argued the I.J. did not review those letters. Well, those letters will not make a decision, but make a difference. That's what the BIA says. Had the BIA simply said, I.J. reviewed everything, then I don't have a case. Here BIA itself says I.J. did not review it. And even if he had reviewed it, it wouldn't make any difference. That's what the BIA says. So BIA has a problem with the BIA. We are saying the character certificates themselves will not make a difference, but you have to take the character certificate and leave it to the judge to make a decision, whether it will make any difference or not, Your Honor. That's the main argument regarding the withholding, Your Honor. Actually, the court addressed this issue in the Sadananda Rasa case, and the court said people who are granted withholding are the people mostly needed as I.J. The circuit said because the people who are granted withholding satisfy the higher burden, those are the very people who deserve asylum. So the fact that the government says they are granted withholding so there's no problem, that has no merit, Your Honor. Thank you. Thank you. We thank both parties for their helpful briefing and oral argument, and we will take the matter under advisement.